IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

ALOYSIUS KEATON                                                                                    PLAINTIFF

v.                                            1:04CV00104 SWW/JTR

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                       DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge Susan Webber Wright. The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection. An original and two copies of the objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### DISPOSITION

Plaintiff, Aloysius Keaton, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed appeal briefs (docket entries #10 and #13), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial

evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleged disability[2] based on headaches and pain in his back, left leg and hip, and stomach. (Tr. 86.) After conducting an administrative hearing, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through March 13, 2004, the date of his decision. (Tr. 24.) On October 20, 2004, the Appeals Council received and considered additional evidence before denying Plaintiff's request for a review of the ALJ's decision; thereby making it the final decision of the Commissioner. (Tr. 5-7.) Plaintiff then filed his Complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 42 years old at the time of the administrative hearing and has a high school education, with an associate degree in computer programming. (Tr. 317, 319.) He has past relevant work as a computer programmer and an administrative services manager. (Tr. 13, 67-72, 319-324.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2003). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

[2] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his decision (Tr. 13-24), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date (Tr. 23); (2) had "severe" impairments that included degenerative changes in the medial compartment of the right knee with mid and posterior medial[3] meniscus tear (resolved), and a history of small left paracentral disc protrusion at C7-T1 and T1-T2, without evidence of cord compression or neural foraminal narrowing (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (*id.*); (4) was not totally credible regarding the nature and severity of his impairments and his ability to work (Tr. 24); (5) retained the RFC for essentially a full range of medium work (*id.*); and (6) was able to perform his

---

[3]The ALJ's opinion actually says "*medical* meniscus tear." (Tr. 15, 23.) This is obviously a scrivener's error. (Tr. 158.)

past relevant work. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

In Plaintiff's Appeal Brief (docket entry #10), he argues that the ALJ erred: (1) in finding that he had the RFC for medium work; (2) in finding that he could perform his past relevant work: (3) in failing to adequately develop the record;(4) in failing to properly consider his limitations due to pain; and (5) in accepting testimony from the vocational expert that did not properly consider all of the demands of Plaintiff's past relevant work. The Court will analyze each of these arguments separately.

First, Plaintiff contends that the ALJ erred in concluding that he could perform medium work.[4] According to Plaintiff, his problems with his right knee, which led to a subsequent knee replacement, render him unable to perform the standing and walking required for such work. (*Pltf's. App. Br.* at 15.) Plaintiff did not allege an onset of disability until October 31, 2001. (Tr. 56, 298, 319.) The problems Plaintiff experienced with his right knee in 1997, when he was still working, were well outside the relevant time period. Furthermore, the medical evidence reflects that Plaintiff did not complain about his knee during the relevant time period, although he did have knee replacement *after* the ALJ's decision. (Tr. 307-09.) During the administrative hearing, Plaintiff's attorney indicated that Plaintiff's back, not his knee, was his primary problem.[5] (Tr. 313, 318.) In

---

[4] *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c) (2003).

[5]The ALJ and Plaintiff's attorney engaged in the following colloquy which indicates Plaintiff's major problem was his back:
>ATTY: There is a burning issue of whether or not he's ignored his knee problem because of his back, and whether or not in the foreseeable future he will need knee replacement. And that's entirely possible in the short-term. He started out -- it was recommended to him a number of years ago --
>ALJ:   Well, I saw the records from 1997 that indicated at some point in the future he might need knee replacement, but I haven't seen anything since then to indicate he's --
>ATTY: I agree.
>ALJ:   -- fussing about his knees hurting.
>ATTY: Well understand, he's primarily concerned with his back and he's

addition, William H. Hefley, Jr., M.D., who performed Plaintiff's knee replacement surgery, indicated that, three months postoperatively, Plaintiff was doing well. (Tr. 307.) Finally, in describing the injuries or conditions that limited his ability to work, Plaintiff listed only headaches and pain in his left leg and hip, back, and stomach in his Disability Report. (Tr. 86.) There is no specific mention of any "knee" problem. *Id.* Thus, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff could perform medium work.

Second, Plaintiff argues that the ALJ erred in determining that he could perform his past relevant work as an administrative services manager. (*Pltf.'s App. Br.* at 15.) During the administrative hearing, the vocational expert testified that Plaintiff's job as an administrative services manager was sedentary. (Tr. 345.) To the extent that Plaintiff seems to acknowledge in his Appeal Brief that he could perform light or sedentary work (*Pltf.'s App. Br.* at 17), it is difficult to follow Plaintiff's argument that the ALJ erred, at step 4, in determining that he could perform his past relevant work as an administrative services manager.

Plaintiff points to a November, 2001, report by Gary T. Southheaver, Ph.D., and suggests that mental limitations further eroded his occupational base.[6] (*Pltf.'s App. Br.* at 15.) However, Dr. Southheaver makes it clear in his report that his conclusions are based on very limited information:

> The only information available on this patient is the MMPI profile. Clinical correlations with medical and other data are required in order to confirm the inferences contained in this report. All references in this report relate to the profile only, without history or complaints known.

(Tr. 189.) The Eighth Circuit has held that, even under the best circumstances, a one-time evaluation by a nontreating psychologist is of little significance. *E.g., Loving v. Dept. of Health & Human*

---

trying to get that under control, and it's the major problem.
    ALJ:   All right.
    ATTY: But he still has some restrictions based upon that problem that may vocationally affect his ability to work.
(Tr. 318-319.)

[6]Of course, this argument is undermined by Plaintiff's own testimony during the administrative hearing that he did not need an anti-depressant. (Tr. 327-328.)

*Services*, 16 F.3d 967, 971 (8th Cir. 1994).

At step 4, it was Plaintiff's burden to prove that he was unable to return to his past relevant work. *E.g., Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994); *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990); *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). After considering the evidence on the record as a whole, the Court concludes that Plaintiff failed to meet his burden of proof and that substantial evidence supports the ALJ's decision that Plaintiff could return to his past relevant work.

Third, Plaintiff argues that the ALJ did not fully and fairly develop the record. (*Pltf.'s App. Br.* at 15-16.) Specifically, Plaintiff contends that, if the ALJ doubted the "authenticity of Plaintiff's treating physician," he should have ordered a consultative orthopedic examination.[7] (*Pltf.'s App. Br.* at 15.) However, a review of the medical record reveals that it was well developed, and, in his decision, the ALJ was careful to review the treatment notes of the many physicians who saw Plaintiff and the variety of tests that they performed.[8] (Tr. 15-17.)

The only physician who significantly restricted Plaintiff's activities was Harold Chakales, M.D. On December 9, 2002, Dr. Chakales completed a Medical Assessment of Ability to do Work-related Activities (Physical) reflecting significant restrictions on Plaintiff's ability to work, including only occasionally lifting/carrying 10-15 pounds. (Tr. 287-88.) However, it appears that Dr. Chakales only saw Plaintiff once on January 29, 2003.[9] (Tr. 283.) Thus, the medical records suggest that Dr. Chakales completed Plaintiff's Medical Assessment of Ability to do Work-related Activities (Physical) *before* he actually examined him.

---

[7]There is nothing in the record to suggest that the ALJ questioned the "authenticity" of any of Plaintiff's treating physicians. Perhaps, Plaintiff intended to use the word "credibility," rather than "authenticity." In any case, it certainly would have aided the Court in evaluating Plaintiff's argument if he had identified by name the specific "treating physician" whose "authenticity" or credibility was in question.

[8]Almost all of these tests proved negative, and Plaintiff's physicians were largely at a loss to identify a source for his alleged pain.

[9]Dr. Chakales's notes reflect that, on other dates, he merely wrote prescriptions for Plaintiff. (Tr. 286.)

According to Dr. Chakales's examination notes (Tr. 283-285), he wanted to obtain test results from a lumbar discogram and electromyograph/nerve conduction velocity of Plaintiff's back and both legs. (Tr. 285.) The subsequent nerve conduction velocities were normal and did not demonstrate myopathy, neuropathy, denervation, or entrapment. (Tr. 275.) Dr. Chakales performed the discogram, but could not replicate Plaintiff's pain. He also found no evidence of herniated nucleus pulposus. (Tr. 278-79.)

The ALJ considered Dr. Chakales's opinion of Plaintiff's restrictions, as set forth in the Medical Assessment of Ability to Do Work-related Activities, but did not give it controlling weight because it was inconsistent with other objective medical evidence, including Dr. Chakales's own notes from his January 29, 2003 examination of Plaintiff and his subsequent testing. (Tr. 16-17, 19-20.) The conclusory opinion of a treating physician,[10] without supporting evidence, does not overcome substantial medical evidence supporting the Commissioner's decision. *Loving v. Dept. of Health & Human Services*, 16 F.3d 967, 971 (8th Cir. 1994); *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992). The ALJ is permitted to issue a decision, without obtaining additional medical evidence, as long as the record is sufficient to allow the ALJ to make an informed decision. *E.g., Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). In this case, the medical record provided more than a sufficient basis for the ALJ to make an informed decision. Thus, the ALJ was not required to obtain additional medical evidence.

Fourth, Plaintiff contends that the ALJ failed to properly consider his limitations due to pain. (*Pltf.'s App. Br.* at 16-17.) However, a review of the ALJ's decision reveals that he properly evaluated Plaintiff's pain and other subjective complaints in light of *Polaski v. Heckler*, 739 F.2d

---

[10]There is some question as to whether Dr. Chakales would qualify as a treating physician. The treating physician rule is premised, at least in part, on the notion that such a physician is more familiar with a claimant's medical condition than are other physicians. *Thomas v. Sullivan*, 928 F.2d 255, 259 n.3 (8th Cir. 1991); *see* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) (2003). Several other physicians had much longer treating relationships with Plaintiff than Dr. Chakales. An ALJ should give more weight to the opinion of doctors who have treated a claimant regularly over a period of months or years because they have a longitudinal picture of a claimant's medical problems. *Strongsom v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004).

1320 (8th Cir. 1984), 20 C.F.R. §§ 404.1529 (c)(3) and 416.929 (c)(3) and Social Security Ruling 96-7p. (Tr. 18.)  For example, the ALJ considered Plaintiff's activities of daily living.  (Tr. 19.)  In a Disability Supplemental Interview Outline, dated October 27, 2002, (Tr. 79), Plaintiff indicated that he:  groomed without assistance; did laundry and dishes, changed sheets, ironed, vacuumed/swept, and took out the trash; shopped for groceries and clothes and completed postal and banking errands; prepared meals seven times a week, including breakfast, lunch and dinner; paid bills, used a checkbook, and counted change; drove, including unfamiliar routes, and used public transportation; and attended church, watched television, and read.  (Tr. 75-76.)  He also testified that he attended his son's football games and his daughter's basketball games and dance recitals.  (Tr. 335.)  These rather extensive daily activities are inconsistent with the level of pain and limitation alleged by Plaintiff.[11]

The ALJ also specifically acknowledged the fact that Plaintiff's impairments caused him some degree of pain.  (Tr. 20, 21.)  However, he went on to hold that this pain was not significant enough to reduce Plaintiff's functional capacity to work.  (Tr. 21.)  The Eighth Circuit has repeatedly recognized that a claimant should be expected to work, despite pain, unless it is disabling.  *Wheeler*

---

[11] *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004)(plaintiff attended college classes and church, shopped for groceries, ran errands, cooked, drove, walked for exercise and visited friends and relatives); *Haley v. Massanari*, 258 F.3d 742, 48 (8th Cir. 2001)(plaintiff took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to radio, read and visited friends and relatives); *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999)(plaintiff cared for himself, did household chores, drove short distance, performed other miscellaneous activities); *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)(plaintiff cooked some meals, watered flowers around house, helped wife paint, watched television, went out for dinner, occasionally drove and occasionally visited with friends); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)(plaintiff dressed and bathed herself, did some housework, cooking and shopping); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1995)(daily caring for one child, driving when unable to find ride and sometimes going to grocery); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1995) (visiting neighbors, cooking own meals, doing own laundry and attending church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (carrying out garbage, carrying grocery bags, driving wife to and from work inconsistent with extreme, disabling pain); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (plaintiff cooked breakfast, "sometimes" needed help with household cleaning and other chores, visited friends and relatives and attended church twice a month); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (plaintiff lived alone, drove, shopped for groceries and did housework with some help from neighbor).

*v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989) (noting that millions of people work every day with varying levels of non-disabling pain). Thus, the Court concludes that the ALJ's credibility analysis was proper. He made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. *E.g., Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995).

Finally, Plaintiff argues that the ALJ erred in allowing the vocational expert to offer testimony that failed to properly consider all of the demands of Plaintiff's past relevant work. (*Pltf.'s App. Br.* at 16.) Plaintiff's attorney was present during the administrative hearing, and questioned the vocational expert at some length. (Tr. 348-51.) He could have cross-examined the vocational expert concerning the demands of Plaintiff's past relevant work, but did not do so.[12] More fundamentally, however, it is black letter law that a vocational expert's testimony is *not* required at Step 4 of the sequential evaluation process, where Plaintiff has the burden of proving he cannot perform his past relevant work. *E.g., Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003) Thus, the Court concludes that Plaintiff's final argument is without merit.

It is not the task of this Court to review the evidence and make an independent decision. Nor is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

---

[12]This would have been the appropriate time to clarify or correct the vocational expert's understanding of the demand of Plaintiff's past relevant work, rather than waiting to raise this issue for the first time on appeal.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and Plaintiff's Complaint be dismissed, with prejudice.

DATED this 5th day of January, 2006.

_____
UNITED STATES MAGISTRATE JUDGE